**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| 3SHAPE A/S | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 6:21-CV-1110-ADA |
| | § | |
| CARESTREAM DENTAL LLC, | § | Patent Case |
| | § | |
| *Defendant*. | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |
| | § | |

**CARESTREAM DENTAL LLC'S MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

# TABLE OF CONTENTS


**I. INTRODUCTION** .......... 1

**II. FACTUAL BACKGROUND** .......... 1

**III. LEGAL STANDARDS** .......... 4

A. Venue—28 U.S.C. § 1400(b). .......... 4

B. Transfer—28 U.S.C. § 1404(a). .......... 5

**IV. ARGUMENT** .......... 5

A. Venue is Not Proper in This District. .......... 5

1. Carestream Does Not Reside in This District. .......... 5

2. Carestream Does Not Have a Regular, Established Place of Business in This District. .......... 5

B. If Not Dismissed for Improper Venue, This Case Should Be Transferred To The Northern District of Georgia. .......... 10

1. This Case Could Have Been Filed in the Northern District of Georgia. .......... 10

2. The Private Interest Factors Favor Transfer. .......... 10

**V. CONCLUSION** .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adaptix, Inc. v. HTC Corp.*,
937 F. Supp. 2d 867 (E.D. Tex. 2013)........11

*Affinity Labs of Tex., LLC v. BlackBerry Ltd.*,
No. 6:13-CV-362, 2014 U.S. Dist. LEXIS 185024 (W.D. Tex. June 10, 2014) .........12, 14, 15

*Am. Cyanamid Co. v. Nopco Chem. Co.*,
388 F.2d 818 (4th Cir. 1968) ........9

*Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*,
No. 2020-2009, 2021 U.S. App. LEXIS 22871 (Fed. Cir. Aug. 3, 2021) ........1, 5, 8

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020)........5

*AptusTech LLC v. Trimfoot Co., LLC*,
No. 4:19-cv-00133, 2020 U.S. Dist. LEXIS 42712 (E.D. Tex. Mar. 12, 2020) ........8, 9

*AstraZeneca AB v. Mylan Pharm. Inc.*,
No. 18-1562-CFC, 2019 U.S. Dist. LEXIS 180264 (D. Del. Oct. 18, 2019) ........14

*Correct Transmission LLC v. ADTRAN, Inc.*,
No. 6:20-cv-00669, 2021 U.S. Dist. LEXIS 93102 (W.D. Tex. May 17, 2021).....8, 12, 13, 15

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017)........4, 6, 9

*Dataquill, Ltd. v. Apple Inc.*,
No. A-13-CA-706-SS, 2014 U.S. Dist. LEXIS 82410 (W.D. Tex. June 13, 2014) ...11, 12, 13, 14

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)........11

*Gesture Tech. Partners, LLC v. Lenovo Grp., Ltd.*,
No.21-cv-00122-ADA, 2021 U.S. Dist. LEXIS 248589 (W.D. Tex. Dec. 29, 2021) 7, 8, 9, 10

*In re Google LLC*,
949 F.3d 1338 (Fed. Cir. 2020)........6, 7

*GreatGigz Solutions, LLC v. Maplebear Inc.*,

No. 20-cv-00737, 2021 U.S. Dist. LEXIS 193682 (W.D. Tex. Oct. 6, 2021) ................8, 9, 10

*Humble Oil & Ref. Co. v. Bell Marine Serv.*,
321 F.2d 53 (5th Cir. 1963) ..........................................................................................5

*Logantree Lp v. Garmin Int'l, Inc.*,
No. SA-17-CA-00098-FB, 2017 U.S. Dist. LEXIS 99925 (W.D. Tex. June 22, 2017)...........9

*Meyer v. Holley*,
537 U.S. 280 (2003).........................................................................................................7

*In re Netflix, Inc.*,
No. 22-110, Order on Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas (Fed. Cir. Jan. 19, 2022)...........................................................11

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
137 S. Ct. 1514 (2017).................................................................................................5, 10

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008)..........................................................................................5

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) .............................................................................................5

*Walker v. Beaumont Indep. Sch. Dist.*,
938 F.3d 724 (5th Cir. 2019) .............................................................................................3

*In re ZTE (USA) Inc.*,
890 F.3d 1008 (Fed. Cir. 2018)........................................................................................4, 8

**Statutes**

28 U.S.C. § 1400(b) .....................................................................................................5, 10

28 U.S.C. § 1404(a) ...........................................................................................1, 5, 10, 12, 15

28 U.S.C. § 1406(a) ...........................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 12(b)(3)...................................................................................................1, 15

Restatement (Third) of Agency § 1.01 .................................................................................7

## I. INTRODUCTION

Defendant Carestream Dental LLC ("Carestream") moves to dismiss Plaintiff 3Shape A/S's ("3Shape") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue or, in the alternative, to transfer this case to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a). Carestream does not reside and has no regular and established place of business in the Western District of Texas (the "District"). Carestream is a Georgia limited liability company and does not own, lease, or rent property in this District. Indeed, 3Shape does not allege otherwise.

Rather, to support venue, 3Shape alleges that certain independent dealers, national service providers, preferred labs, and remote employees are located in this District. These entities are separate from Carestream and their activities cannot be imputed to Carestream. "[W]here...companies have maintained corporate separateness, the place of business of one corporation is not imputed to the other for venue purposes." *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1289 (Fed. Cir. 2021). None of these entities and employees are Carestream's agents, and Carestream has not ratified their places of business or residence as its own. A Carestream employee residing in this District is not a regular and established place of business of Carestream. The identified third party dealers work with many other suppliers and have no exclusive relationship with Carestream. The Complaint must be dismissed for improper venue.

In the alternative, Carestream respectfully asks the Court to transfer this case to the Northern District of Georgia—the more convenient venue—pursuant to § 1404(a).

## II. FACTUAL BACKGROUND

On October 26, 2021, 3Shape filed this lawsuit against Carestream alleging infringement of U.S. Patent Nos. RE48,221; 10,695,151; and 11,076,146 (together, the "Patents-in-Suit"). ECF No. 1 ("Compl."), ¶¶25-29. 3Shape waited until January 7, 2022 to serve Carestream.

Carestream is a Georgia limited liability company with its headquarters in Atlanta, Georgia since 2003. Compl. ¶3; *see also* Declaration of Edward Shellard, D.M.D. ("Shellard Decl.") ¶¶2, 3. Apart from 3Shape's conclusory allegations that Carestream regularly conducts business in this District (*see*, *e.g.*, Compl. ¶¶8-10), 3Shape alleges no direct connection between Carestream and this District. 3Shape does not, and could not, allege that Carestream has any offices, manufacturing facilities, service or call centers, distribution or warehouse facilities, or other dedicated places of business in the District. Shellard Decl. ¶4. Instead, 3Shape alleges that Carestream distributes products through independent, authorized dealers in this District, *e.g.*, Burkhart Dental Supply located in Austin, Texas ("Burkhart"). *Id.* ¶ 13. Further, 3Shape alleges that Carestream conducts business through National Service Providers in this District, *e.g.*, Benco Dental Supply Company in Elgin, Texas ("Benco"). *Id.* ¶¶17-18. Moreover, 3Shape alleges that Carestream lists different preferred labs located throughout Texas on its website. *Id.* ¶19. And lastly, 3Shape alleges that Carestream contracts with and seeks to recruit employees residing in this District. *Id.* ¶¶20-24.

Carestream has no corporate relationship with these dealers, service providers, and labs. Shellard Decl. ¶¶5-7. Carestream does not own these entities, nor does Carestream share a corporate parent with any of them. *Id.* Carestream exercises no authority or control over their business operations. *Id.* These entities are completely separate and independent entities from Carestream, acting as non-exclusive distributors of, or labs of, Carestream products. *Id.* Carestream works with other independent dealers and labs across the U.S., and these independent dealers and labs likewise work with suppliers other than Carestream. *Id.* With respect to the few remote employees, Carestream does not own, lease, or rent any portion of the employees' homes, nor does it locate their place of residence, reimburse their housing costs, or otherwise exercise control over their living arrangement. *Id.* ¶¶12-13.

According to its website, Burkhart started in Tacoma, Washington in 1888 and is a family-run business through five generations. Ex. 1 (excerpts of website).[1] Even accepting 3Shape's allegation as true that "Burkhart is authorized to market, sell, install and service nearly all of Carestream Dental's equipment, accessories and imaging software" does not establish it is a Carestream agent. Indeed, Burkhart lists 36 "Manufacturer Partners" who make products purportedly supplied by Burkhart—***Carestream is not even on this list***. *Id.* 3Shape's allegation that Burkhart "is held out to the consuming public as a place of Carestream where Carestream, through its dealer, sells Carestream products" (Compl. ¶13), is a misrepresentation of Burkhart's business given the fact that it is a *non-exclusive* distributor of some Carestream products.

According to its website, Benco is the largest privately owned full-service distributor of dental supplies, equipment, consulting, and equipment services. Ex. 2 (excerpts of website). Originally located in Wilkes-Barre, Pennsylvania, the company has grown to multiple showroom locations, five distribution centers servicing over 30,000 dental professionals. *Id.* Even accepting 3Shape's allegation that Benco, among other alleged service providers, installs, supports, and services Carestream dental equipment (Compl. ¶18), does not establish it is a Carestream agent. Indeed, Benco installs, supports, and services a wide variety of dental equipment—not limited to Carestream products, and the parties lack any exclusive relationship. *Id.*

Carestream maintains a preferred lab program as a means for third party labs to let their clients know the lab can receive digital impressions from Carestream devices. Ex. 3 (Carestream Preferred Lab Flyer). To become a preferred lab, one must simply call Carestream Customer Care, complete a lab questionnaire, accept the test case, verify they are able to accept and use the digital

[1] Courts may take judicial notice of matters of public record when deciding a motion to dismiss. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

impression files, and the business will be listed on the Carestream Dental Preferred Lab list. *Id.* Again, for 3Shape to allege these labs to be regular and established places of Carestream is a misrepresentation of the lab's business and their non-exclusive relationship with Carestream.

3Shape has no business in this District either. 3Shape is a Danish corporation with a principal place of business in Denmark. Compl. ¶ 1. Ironically, 3Shape recently argued to this very Court that its U.S. affiliate—3Shape Inc.—could not be joined to a lawsuit brought by competitor Align Technology, Inc. in this District because 3Shape Inc. is incorporated under the laws of Delaware and its headquarters and only physical location is in New Jersey; and, accordingly, "it has no regular and established place of business in this District." Ex. 4, *Align Tech., Inc. v. 3Shape A/S*, No. 6:20-cv-00979, Motion at 9-10 (W.D. Tex. Dec. 2, 2020).

## III. LEGAL STANDARDS

### A. Venue—28 U.S.C. § 1400(b).

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). 3Shape bears the burden of establishing proper venue as to Carestream. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). There are three requirements to show that a defendant has a regular and established place of business: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) (the "*Cray* Requirements"). Upon a finding that a case lay venue in the wrong division or district, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Where venue is based on activities of a related entity, a threshold inquiry is whether the related companies have maintained corporate separateness—where related companies "have maintained corporate

separateness, the place of business of one corporation is not imputed to the other for venue purposes." *Andra*, 6 F.4th at 1289.

**B. Transfer—28 U.S.C. § 1404(a).**

In patent cases, motions to transfer under § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a)'s threshold inquiry is whether the case could initially have been brought in the proposed transferee forum. *In re Volkswagen AG*, 371 F.3d 201, 202–03 (5th Cir. 2004). If that inquiry is satisfied, the Court determines whether transfer is proper by analyzing and weighing various private and public interest factors. *Humble Oil & Ref. Co. v. Bell Marine Serv.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (applying Fifth Circuit law).

**IV. ARGUMENT**

**A. Venue is Not Proper in This District.**

Carestream does not reside in this District and does not have a regular and established place of business in this District.[2] Therefore, venue is improper.

**1. Carestream Does Not Reside in This District.**

A domestic corporation resides only in its state of incorporation. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017). As 3Shape alleges, Carestream is organized in the State of Georgia. Compl. ¶3; *see also* Shellard Decl. ¶3. Carestream thus does not reside in this District under § 1400(b).

**2. Carestream Does Not Have a Regular, Established Place of Business in This**

[2] Carestream disputes that it has committed any alleged act of infringement in this District.

**District.**

Carestream does not have a regular and established place of business in this District. Carestream lacks: (1) any physical place of business in this District; and (2) any employees or agents conducting its business from a regular, physical place of Carestream's business.

**a) Carestream Does Not Have A Physical Place of Business in This District.**

3Shape does not allege that Carestream has a physical place of business in this District and, accordingly, does not attempt to satisfy the *Cray* Requirements through a physical place of business of Carestream. Nor could it, because Carestream does not own, lease, or rent any offices, manufacturing facilities, service or call centers, distribution or warehouse facilities, or other physical places of business in the District. Shellard Decl. ¶4.

**b) No Employees or Agents Conduct Its Business From A Regular, Physical Place of Business of Carestream.**

3Shape attempts to establish venue by attributing physical places of business of third party dealers, service providers, preferred labs, and employees to Carestream. This attempt fails. *Cray* emphasizes "a regular and established place of business requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged place of business." *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020) (internal quotation omitted). Neither the independent dealers, service providers, and preferred labs operating their businesses in the district, nor the employees choosing to live in this District, constitute a regular and established place of business of Carestream.

**(1) Dealers, Service Providers, and Preferred Labs Are Not Places of Business of Carestream.**

Dealers, service providers, preferred labs, and employees are not regular and established places of business of Carestream. With respect to *Cray*'s second requirement (regular and established place of business), this Court acknowledges that while "third-party authorized service

centers and resellers have a regular and established place of business for their own business purposes. . . . for venue purposes, any repair or sale from a service center or reseller is a one-time event and, therefore, does not constitute the conduct of a 'regular and established place of business.'" *Gesture Tech. Partners, LLC v. Lenovo Grp., Ltd.*, No.21-cv-00122-ADA, 2021 U.S. Dist. LEXIS 248589, at *8-9 (W.D. Tex. Dec. 29, 2021) (citing *Google*, 949 F.3d at 1346 ("The installation activity does not constitute the conduct of a 'regular and established business' since it is a one-time event for each server."). While the dealers, service providers, and preferred labs may have a physical place in this district, it is not a regular and established place of business of Carestream under *Cray*'s second requirement.

With respect to Cray's third requirement (place of defendants), for third party dealers, service providers, and preferred labs to be a "place of the defendants," they must act as Carestream's agents. *See Gesture Tech.*, 2021 U.S. Dist. LEXIS 248589 at *9. "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006). "The essential elements of agency are (1) the principal's 'right to direct or control' the agent's actions, (2) 'the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf,' and (3) the 'consent by the [agent] to act.'" *Google*, 949 F.3d at 1345 (alterations in original) (quoting *Meyer v. Holley*, 537 U.S. 280, 286 (2003)).

Carestream does not have the "right to direct or control" the third party dealers, service providers, and preferred labs' actions. Shellard Decl. ¶¶5-7. These entities may sell, service, and interact with the CS 3600, CS 3700, and CS3800 intraoral scanners ("Accused Products"), but the mere presence of a contractual relationship between Carestream and the dealers or service provides

in which they sell to and service Carestream's customers does not necessarily make them a regular and established place of business of Carestream. *See Gesture Tech.*, 2021 U.S. Dist. LEXIS 248589 at *9-10; *see also In re ZTE (USA) Inc.*, 890 F.3d at 1015 ("The mere presence of a contractual relationship between [the 'agent'] and [Defendant] pursuant to which [the 'agent'] provides call center services to [Defendants'] customers does not necessarily make [the 'agent's'] call center 'a regular and established place of business' of [Defendant] in the [District].").

The dealers, service providers, and preferred labs are independently owned and operated. Shellard Decl. ¶¶5-7. "A threshold inquiry when determining whether the place of business of one company can be imputed to another, related company is whether they have maintained corporate separateness. . . . [W]here related companies have maintained corporate separateness, the place of business of one corporation is not imputed to the other for venue purposes." *Andra*, 6 F.4th at 1289. Here, Carestream and the third-party authorized dealers, service providers, and preferred labs are independent corporations and companies; they are not related and therefore venue cannot be imputed to Carestream. *See Gesture Tech.*, 2021 U.S. Dist. LEXIS 248589 at *10-11.

In sum, 3Shape fails to allege any facts that these third parties support venue in this District. *Id.* at *11-12; *see also GreatGigz Solutions, LLC v. Maplebear Inc.*, No. 20-cv-00737, 2021 U.S. Dist. LEXIS 193682, at *9-10 (W.D. Tex. Oct. 6, 2021) ("GreatGigz fails to meet its burden that the retail partner stores are the defendant's places. GreatGigz points to no evidence, contractual or otherwise, illustrating [Defendant] owns or leases the stores, nor exercise other attributes of possession or control over the stores."); *Correct Transmission LLC v. ADTRAN, Inc.*, No. 6:20-cv-00669, 2021 U.S. Dist. LEXIS 93102, at *8 (W.D. Tex. May 17, 2021) ("[A]n independent contractor relationship is insufficient to satisfy the third element of Cray."); *AptusTech LLC v. Trimfoot Co., LLC*, No. 4:19-cv-00133, 2020 U.S. Dist. LEXIS 42712, at *9-13 (E.D. Tex. Mar.

12, 2020) ("[T]he Court joins the vast number of other district courts . . . that have held an independent retailer, or a distributor, does not satisfy the requirement that the defendant has a regular and established place of business in the forum."); *Logantree LP v. Garmin Int'l, Inc.*, No. SA-17-CA-00098, 2017 U.S. Dist. LEXIS 99925, at *4 (W.D. Tex. June 22, 2017) (defendants' website allowing viewers to access distributor list did not establish venue).

3Shape never even alleges (nor could it) that the dealers, service providers, preferred labs, or employees are Carestream agents (or affiliated entities or alter egos of one another) and cannot make such an argument in opposition. Nor is there any allegation that Carestream has any exclusive relationship with these third party entities. Indeed, the evidence is to the contrary, as Carestream works with other independent dealers across the U.S., and these third party dealers work with entities other than Carestream. Shellard Decl. ¶¶5-7.

**(2) Employees Are Not Places of Business of Carestream.**

While remote employees' homes may be a physical place in this District under *Cray*'s first requirement, they are not regular and established places of Carestream's business for purposes of *Cray*'s second and third requirement. "As for a 'regular and established place of business,' it is not enough that a physical location exists in the district where an employee performs work for his employer." *Gesture Tech.*, 2021 U.S. Dist. LEXIS 248589 at *5-6 (citing *Am. Cyanamid Co. v. Nopco Chem. Co.*, 388 F.2d 818 (4th Cir. 1968)). "The statute clearly requires that venue be laid where 'the defendant has a regular and established place of business,' not where the defendant's employee owns a home in which he carries on some of the work that he does for the defendant." *Cray*, 871 F.3d at 1365 (quoting *Am. Cyanamid*, 388 F.2d at 820).

In *GreatGigz Sols.*, this Court noted that employees' homes are not a regular and established place of business when the business does not reimburse its remote employee's housing costs or otherwise exercise control over the employees' living arrangements. 2021 U.S. Dist.

LEXIS 193682 at *7-8. Carestream does not and has no plans to reimburse any employees' housing costs or otherwise exercise control over their living arrangements such that their homes would be considered the place of business of Carestream. Shellard Decl. ¶¶12-13.

3Shape's identification of two employees' LinkedIn profiles is insufficient to show Carestream maintains a "regular and established place of business" in this District. This Court has observed that "LinkedIn profiles are too speculative to show the employees' homes are 'regular and established places of business of the Defendants.'" *Gesture Tech.*, 2021 U.S. Dist. LEXIS 248589 at *6-7. 3Shape does not allege that Carestream owns, leases, or rents any portion of the employees' homes, selects their location, stores inventory or conducts demonstrations, or conditions employment on maintenance of the location in this District. Employees' homes are simply not used by Carestream as a place of its business and, accordingly, venue is improper with respect to the employees' homes. *See id.* at *7-8.

### B. If Not Dismissed for Improper Venue, This Case Should Be Transferred To The Northern District of Georgia.

If the Court does not dismiss this case for improper venue it should transfer this case to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a). Both the public and private interest factors recognized by the Federal Circuit and this District weigh strongly in favor of transfer.

#### 1. This Case Could Have Been Filed in the Northern District of Georgia.

Venue is proper in the judicial district "where the defendant has committed acts of infringement and has a regular and established place of business." *Id.* § 1400(b). Carestream is a Georgia limited liability company and headquartered in Atlanta, which sits in the Northern District. Shellard Decl. ¶3. Accordingly, 3Shape could have filed this action in the Northern District of Georgia. *See TC Heartland*, 137 S. Ct. at 1521.

#### 2. The Private Interest Factors Favor Transfer.

**a) The Ease of Access to Sources of Proof Favors Transfer.**

Transfer will ease access to sources of proof. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). "The Fifth Circuit has cautioned this factor remains relevant despite technological advances having made electronic document production commonplace." *Dataquill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 U.S. Dist. LEXIS 82410, at *8 (W.D. Tex. June 13, 2014). Carestream does not maintain documents in this District. Instead, documents concerning development and technical operation, marketing, advertising, accounting, and financial planning related to the Accused Products are located in Georgia. Compl. ¶3; *see also* Shellard Decl. ¶¶8-10. Carestream's primary corporate decision-making also takes place at Carestream's Atlanta headquarters, and witnesses knowledgeable of marketing, advertising, accounting, and financial planning related to the Accused Products reside there as well. Shellard Decl. ¶¶4, 11. Likewise, 3Shape lacks any connection to this District. 3Shape is a Danish corporation with a principal place of business in Copenhagen (Compl. ¶1), with no apparent location in this District. 3Shape has not identified any documents or other evidence located in this District. This private interest factor weighs strongly in favor of transfer. *See, e.g.*, Ex. 5, *In re Netflix, Inc.*, No. 22-110, Order on Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas, at 6 (Fed. Cir. Jan. 19, 2022).

**b) The Availability of Compulsory Process is Neutral.**

The location of third party witnesses and the availability of compulsory process favors transfer when "a transferee district has absolute subpoena power over a greater number of non-party witnesses" than the transferor district. *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013). The Federal Circuit routinely requires transfer where the transferee forum can

compel more relevant witnesses to attend depositions and trials than can the transferor forum. No third parties with relevant evidence reside in Texas. Moreover, each of the named inventors of the Patents-in-Suit apparently reside outside of this District (in Denmark, Canada, or Sweden). ECF Nos. 1-3, 1-4, and 1-5. 3Shape does not assert, and Carestream is not aware of, any critical sources of third party discovery in this District or in the Northern District of Georgia. This factor is neutral.

**c) The Cost of Attendance for Willing Witnesses Favors Transfer.**

The third private interest factor considers the cost of attendance for willing witnesses, and "[t]he convenience of the witnesses is probably the single most important factor in transfer analysis." *Affinity Labs of Tex., LLC v. BlackBerry Ltd.*, No. 6:13-CV-362, 2014 U.S. Dist. LEXIS 185024, at *12 (W.D. Tex. June 10, 2014). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id*. Moreover, "this Court has previously held that the last private interest factor favors transfer when most witnesses are present in the transferee forum and the plaintiff has no presence in the Western District." *Correct Transmission*, 2021 U.S. Dist. LEXIS 93102, at *14. This factor also weighs in favor of transfer in "a lawsuit between a foreign plaintiff and a defendant with longstanding and significant ties to the [transferee district]." *Dataquill*, 2014 U.S. Dist. LEXIS 82410 at *12. Given that many Carestream employees with knowledge of the operation, advertising, marketing, accounting, and financial planning related to the Accused Products live in the Northern District of Georgia,[3] this factor weighs in favor of transfer. Shellard Decl. ¶¶8-11.

In contrast, traveling to this District would require all Carestream witnesses to travel more than 800 miles. 3Shape, a Danish corporation with a principal place of business in Denmark, is a

[3] Some employees of Carestream with technical knowledge of the Accused Products may need to travel from Rochester, New York, which is closer to Georgia than it is to this District.

foreign plaintiff, (Compl. ¶1), and any witness from 3Shape will need to travel a distance greater than 100 miles, which does not weigh against transfer as those witnesses will travel regardless of venue. Since most, if not all, relevant witnesses are not within 100 miles of this Court, the cost of attending hearings and trial will be significantly lower in the Northern District of Georgia, and Carestream has significant ties to the Northern District of Georgia (where it is headquartered), trial would be easier, more expeditious, and less expensive in the Northern District of Georgia. This factor favors transfer.

**d) Transfer Presents No Practical Problems.**

No practical problems are presented by transferring this case to the Northern District of Georgia. Carestream has not filed a responsive pleading and the Court has not entered a scheduling order. Therefore, this factor favors transfer, as the Northern District of Georgia is just as equipped to hear this case as this District and all events that have occurred would have also occurred in the Northern District of Georgia. Moreover, transfer will make trial easier and less expensive. "[T]his Court has previously held that the last private interest factor favors transfer when most witnesses are present in the transferee forum and the plaintiff has no presence in the Western District." *Correct Transmission*, 2021 U.S. Dist. LEXIS 93102, at *14. This factor also weighs in favor of transfer in "a lawsuit between a foreign plaintiff and a defendant with longstanding and significant ties to the [transferee district]." *Dataquill*, 2014 U.S. Dist. LEXIS 82410, at *12. 3Shape, a Danish corporation with a principal place of business in Denmark, is a foreign plaintiff. Compl. ¶1. Likewise, Carestream has no place of business in Texas, and relevant witnesses are instead present in the Northern District of Georgia. Shellard Decl. ¶¶4, 8-11. Carestream has significant ties to the Northern District of Georgia, where it is headquartered. Thus, trial would be easier, more expeditious, and less expensive in the Northern District of Georgia in this case, favoring transfer.

**e) Court Congestion Favors Transfer.**

Transfer will be to a less congested court. "Attempting to accurately understand another court's docket from the outside is always a difficult task." *Dataquill*, 2014 U.S. Dist. LEXIS 82410, at *12-13. Yet, courts often look to publicly available data concerning the time to trial on average in the competing districts. *Id.* Also considered are the total number of cases and the number of "weighted filings," which "account[s] for the different amounts of time district judges require to resolve various types of civil and criminal actions." *AstraZeneca AB v. Mylan Pharm. Inc.*, No. 18-1562-CFC, 2019 U.S. Dist. LEXIS 180264, at *23-24 (D. Del. Oct. 18, 2019). The most recent data available from the Administrative Office of the United States Courts shows that, for the twelve-month period ending on June 30, 2021, a total of 12,966 cases were filed in the Western District of Texas, while just 6,974 were filed in the Northern District of Georgia. During this same time period, the weighted filings in the Western District of Texas were 912 per judge, while the weighted filings in the Northern District of Georgia were 554 per judge. Finally, the median time from filing to disposition for a civil matter was 7.7 months in the Western District of Texas, and 6.5 months in the Northern District of Georgia. *Id.* The publicly available data indicates less congestion, and hence the quicker and more efficient disposition of this case, in the Northern District of Georgia. This factor weighs in favor of transfer.

**f) Northern District of Georgia Has a Stronger Local Interest.**

Transfer will be to a locale with a stronger interest in the case. "The district where a party has its principal place of business typically has a stronger local interest in the adjudication of the case." *Affinity Labs*, 2014 U.S. Dist. LEXIS 185024, at *10. The fact that a defendant's products may be present in a transferor forum "is largely irrelevant, as the mere presence of accused products in a district does not create a local interest." *Id.* Neither 3Shape, nor Carestream has a principal place of business in this District. (Compl. ¶¶ 1, 3). Employees responsible for marketing,

advertising, accounting, and financial planning relating to the Accused Products predominantly reside in the Northern District of Georgia. Shellard Decl. ¶¶8-11. The fact that certain of the Accused Products reached end users in Texas does not create a local interest in this District. The Northern District of Georgia accordingly has a stronger local interest than this District.

**g) The Remaining Factors Do Not Weigh Against Transfer.**

The remaining factors for the Court to consider are "the familiarity of the forum with the law that will govern the case" and "the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Correct Transmission*, 2021 U.S. Dist. LEXIS 93102, at *5–6. Neither of these factors are particularly relevant in this case because both this Court and the Northern District of Georgia would apply federal patent law to this case. *See Correct Transmission*, 2021 U.S. Dist. LEXIS 93102, at *16 ("Both districts are familiar with the uniform body of federal patent law overseen by the Federal Circuit, and there are no issues with conflict of laws or foreign law. Thus, both factors are neutral"); *Affinity Labs*, 2014 U.S. Dist. LEXIS 185024, at *11–12 (W.D. Tex. June 10, 2014) (finding the final public factors neutral because "neither party disputes that both federal courts are familiar with the relevant law" and "there is no known conflict of laws or foreign law at issue in this case").

All of the public and private factors, as a whole, strongly favor transfer. Because the factors taken as a whole strongly weigh in favor of transfer, if this case is allowed to proceed, it should proceed in the Northern District of Georgia.

## V. CONCLUSION

This Court should dismiss this case for improper venue under FRCP 12(b)(3) or alternatively transfer this case to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).

Dated: January 28, 2022

Respectfully submitted,

*/s/Sara Ann Brown*

Sara Ann Brown
Texas State Bar No. 24075773
**Foley & Lardner LLP**
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
sabrown@foley.com

OF COUNSEL:

Jeanne M. Gills
R. Spencer Montei
Michelle J. Song
**Foley & Lardner LLP**
321 North Clark Street, Suite 3000
Chicago, Illinois 60654-4762
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
jmgills@foley.com
rmontei@foley.com
mxsong@foley.com

*Counsel for Defendant,*
*Carestream Dental LLC*